UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 JUL -9  PM 2: 35

CLERK

BY  *EH*
DEPUTY CLERK

KONY SERVICES, INC.,

          Plaintiff,

          v.

Laura B. ZUCHOWSKI, in her
Official Capacity, Director of the
Vermont Service Center, U.S.
Citizenship and Immigration
Services, U.S. Department of
Homeland Security;

L. Francis CISSNA, in his Official
Capacity, Director, U.S. Citizenship
and Immigration Services, U.S.
Department of Homeland Security;

Kirstjen NIELSEN, in her Official
Capacity, Secretary, U.S. Department
of Homeland Security;

U.S. Citizenship and Immigration
Services;

U.S. Department of Homeland
Security,

          Defendants.

Case No. 2:18-cv-110

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF AND
REVIEW OF AGENCY
ACTION UNDER THE
ADMINISTRATIVE
PROCEDURE ACT**

## INTRODUCTION

1.  This action seeks declaratory and injunctive relief against Laura B.

ZUCHOWSKI, Director of the Vermont Service Center, U.S. Citizenship and

Complaint                            Case No. _____

Immigration Services ("USCIS"), U.S. Department of Homeland Security ("DHS"); L. Francis CISSNA, Director, USCIS; Kirstjen NIELSEN, Secretary, U.S. Department of Homeland Security; USCIS, and DHS (collectively "the Government") under the Administrative Procedure Act ("APA"), 5 U.S.C. §702, based on the Government's improper denial of Form I-129, Petition for Nonimmigrant Worker, otherwise known as an H-1B visa petition, filed by KONY SERVICES, INC. ("Kony") on behalf of prospective employee, Thulasiram Kuncham, whom Kony sought to employ in the position of Senior Software Engineer.

2.   Kony is an industry leader in developing sophisticated mobile application platforms. Specifically, Kony empowers businesses to quickly design, build, deploy, and manage innovative mobile applications that offer brilliant user experiences. It has created smartphone applications and mobile solutions for more than 150 Fortune 500 companies, including financial institutions, insurance companies, and health care providers. In order to deliver the best possible customer service and effectively serve their clients, Kony employees frequently perform work at client sites, where they use Kony's proprietary, homegrown technology to create unique, customized solutions for their clients. The Kony employee typically works with the client to integrate Kony's solutions into the client's existing information technology apparatus, often remaining past the launch of the new

technology to ensure that Kony's products and services meet the high standards the company's clients have come to expect.

3. For years, Kony has petitioned for—and received—H-1B visa classification for talented software developers like Thulasiram Kuncham. Kony's recent petition for Mr. Kuncham was denied by the Government, however, based on an erroneous interpretation of the Immigration and Nationality Act ("INA") and its implementing regulations.

4. Pursuant to the INA, a United States employer may sponsor a qualified noncitizen to temporarily enter the United States to "perform services ... in a specialty occupation." 8 U.S.C. §§1101(a)(15)(H)(i)(b); 1184(c).

5. Defendant USCIS administers the H-1B program in conjunction with the Department of Labor pursuant to a carefully structured regime that Congress has refined over the years. Under that regime, USCIS's adjudicative responsibility with respect to H-1B visa petitions is twofold:

> [USCIS] shall determine if the [petition] involves a specialty occupation as defined in [8 U.S.C. §1184(i)(1)]. [USCIS] shall also determine whether the particular alien for whom H-1B classification is sought qualifies to perform services in the specialty occupation as prescribed in [8 U.S.C. §1184(i)(2)].

8 C.F.R. §214.2(h)(4)(i)(B)(2). If USCIS approves a particular petition, the noncitizen beneficiary for whom the petition was filed will be issued an H-1B visa for a period of up to three years. 8 C.F.R. §214.2(h)(9)(iii)(A)(1).

6. USCIS denied Kony's petition for Mr. Kuncham because, according to the agency, Kony did not submit sufficient evidence to establish that there is "specialty occupation work for the beneficiary to perform throughout the entire requested validity period." In other words, USCIS denied Kony's petition because of the quantity of work the company had lined up for Mr. Kuncham. USCIS did *not* conclude that Mr. Kuncham is not qualified to perform specialty occupation-level work, nor did USCIS assert that the position of a senior software engineer is not a specialty occupation.

7. The Government's decision is unlawful and should be set aside, because USCIS does not have the authority under the INA or its implementing regulations to require an employer petitioning for an H-1B worker to demonstrate, at the time of filing the H-1B petition, that the employer has three years' worth of work for the prospective employee to complete.

8. Because the Government's decision denying Kony's petition for Mr. Kuncham is not in accordance with law and represents a misinterpretation of the INA and implementing regulations that exceeds the authority vested in the agency by statute, this Court should hold unlawful and set aside the Government's decision. 5 U.S.C. §706(2).

## JURISDICTION

9.    This case arises under the Immigration and Nationality Act (INA), 8 U.S.C.
§1101 *et seq.* and the Administrative Procedure Act (APA), 5 U.S.C. §701 *et seq.*
This Court has jurisdiction pursuant to 28 U.S.C. §1331, as a civil action arising
under the laws of the United States. This Court also has authority to grant
declaratory relief under 28 U.S.C. §§2201-02, and injunctive relief under 5 U.S.C.
§702, and 28 U.S.C. §§1361-62. The United States has waived sovereign immunity
under 5 U.S.C. §702.

10.   Plaintiff may seek judicial review upon denial of its visa petition without
any further administrative appeal. *See, e.g., EG Enters. v. DHS*, 467 F. Supp. 2d
728, 732-33 (E.D. Mich. 2006) (H-1B petition denial; USCIS agreed in its cross-
motion that exhaustion not required); *RCM Technologies, Inc. v. U.S. Dept. of
Homeland Sec.*, 614 F. Supp. 2d 39, 45 (D.D.C. 2009) ("[P]laintiffs need not
pursue an AAO appeal before seeking judicial review of denied visa applications
in federal court.").

## VENUE

11.   Venue is properly with this Court pursuant to 28 U.S.C. §1391(e), because
this is a civil action in which the Defendants are employees or officers of the
United States, acting in their official capacity, and an agency of the United States;
because a substantial part of the events or omissions giving rise to the claim

occurred in the District of Vermont; and there is no real property involved in this action.

## PARTIES

**Plaintiff**

12. KONY SERVICES, INC., is a technology company that designs, builds, integrates, deploys, and manages sophisticated mobile application platforms for businesses. Kony's headquarters are located in Austin, Texas. It has satellite offices throughout the United States, as well as in Hong Kong, Australia, the United Kingdom, and India. On March 16, 2018, USCIS denied Kony's Form I-129, Petition for Nonimmigrant Worker, filed on behalf of beneficiary Mr. Thulasiram Kuncham.

**Defendants**

13. Defendant Laura B. ZUCHOWSKI is the Director of the Vermont Service Center. Among other things, the Vermont Service Center is responsible for adjudicating visa petitions, such as the H-1B visa petition filed by Kony. Defendant Zuchowski is sued in her official capacity.

14. L. Francis CISSNA is the Director of U.S. Citizenship and Immigration Services ("USCIS"). As Director, Defendant Cissna has been delegated the authority to direct the administration of USCIS, and to enforce the Immigration and Nationality Act ("INA") and all other laws relating to the immigration of non-

6

citizens. Defendant Cissna is responsible for USCIS's policies, practices, and procedures, and oversees the USCIS officers responsible for adjudicating Plaintiff's H-1B visa petition. Defendant Cissna is sued in his official capacity.

15. Defendant Kirstjen NIELSEN is the Secretary of the U.S. Department of Homeland Security ("DHS"). DHS is the federal agency encompassing USCIS, which is responsible for the administration and enforcement of the INA and all other laws relating to the immigration of non-citizens. In her official capacity as Director, Defendant Nielsen has responsibility for the administration and enforcement of the immigration and naturalization laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat. 2135 (Nov. 25, 2002); *see also* 8 U.S.C. §1103(a). Defendant Nielsen is sued in her official capacity.

16. Defendant U.S. Citizenship and Immigration Services is an agency of the DHS, and is responsible for overseeing the adjudication of immigration benefits. USCIS implements federal law and policy with respect to immigration benefits applications.

17. Defendant the U.S. Department of Homeland Security is a cabinet department of the United States federal government responsible for immigration-related services (U.S. Citizenship and Immigration Services or "USCIS"), enforcement (Immigration and Customs Enforcement or "ICE"), and investigations

(Homeland Security Investigations or "HSI"), among other duties. DHS oversees USCIS and its implementation of federal law and policy with respect to immigration benefits applications.

## LEGAL BACKGROUND

### H-1 Visa Program

18. The H-1B specialty occupation visa program, codified at 8 U.S.C. §1101(a)(15)(H)(i)(b), allows United States employers to bring foreign workers holding at least the equivalent of a bachelor's degree into the United States for employment in specialty occupations. Congress set a statutory ceiling on the number of H-1B petitions the Government may issue (with some exemptions): 65,000 for individuals with baccalaureate degrees and an additional 20,000 for individuals who hold U.S. Master's degrees. 8 U.S.C. §1184(g)(1)(A)(vii); 8 U.S.C. §1184(g)(5)(C).

19. Prior to 1990, the Immigration and Naturalization Service ("INS"), Defendant USCIS's predecessor in interest, was the sole agency authorized by Congress to regulate the admission of what was then called the "H-1" visa category for non-immigrant professional workers of distinguished merit and ability. 8 U.S.C. §1101(a)(15)(H) (1990).

20. In 1990, Congress amended the INA, materially altering the professional H-1 visa program and the way in which it is administered. *See* Immigration Act of

1990 ("IMMACT 90"), Pub. L. 101-649, 104 Stat. 4978, 5019-22 (1990) (codified

as amended at 8 U.S.C. §§1184(g)-(i), 1101(a)(15)(H)(i), 1182(n)). Congress

permitted foreign professional employees in "specialty occupations" to work in the

United States in H-1B status for three-year increments.

    21. An H-1B visa is available to:

> an alien … who is coming temporarily to the United States to perform
> services … in a specialty occupation described in section 1184(i)(1) of
> this title … who meets the requirements for the occupation specified
> in section 1184(i)(2) of this title … and with respect to whom the
> Secretary of Labor determines and certifies to the [DHS] that the
> intending employer has filed with the Secretary an application
> under section 1182(n)(1) of this title….

8 U.S.C. §1101(a)(15)(H)(i)(b).

    22. Notably, through IMMACT 90, Congress stripped the INS of its previously

unfettered authority over non-immigrant professional visa classification and split

the administration of, and jurisdiction over, the H-1B visa program between the

Department of Labor ("DOL") and the INS. 8 U.S.C. §§1182(n), 1184(g), 1184(i).

**Labor Condition Application ("LCA")**

    23. The H-1B process established by IMMACT 90 remains operable today, and

begins with employers filing a labor condition application ("LCA") with DOL. 8

U.S.C. §1182(n)(1).

    24. Through the LCA, the employer certifies, among other things, that during

the period of authorized employment, the employer is offering and will continue to

offer a wage that is at least "the actual wage level paid by the employer to all other individuals with similar experience and qualifications for the specific employment in question" or "the prevailing wage level for the occupational classification in the area of employment," whichever is higher, and that the employer will provide "working conditions … that will not adversely affect the working conditions of workers similarly employed." 8 U.S.C. §1182(n)(1)(A). On the LCA, an employer must list the occupation, duration of the LCA validity period, prevailing wage, and "area of intended employment." *See* ETA Form 9035. If the LCA is complete and contains no obvious inaccuracies, DOL certifies the application, 8 U.S.C. §1182(n)(1), enabling the employer to proceed to the next step in the application process, which is the H-1B visa petition filed with Defendant USCIS.

25. Although DOL's role in administering the H-1B program may appear perfunctory, it is anything but. By completing and signing the LCA, the employer becomes subject to DOL's jurisdiction and enforcement authority for the duration of the worker's H-1B visa status plus one year afterward. 8 U.S.C. §1182(n)(2); 20 C.F.R. §655.700 *et seq*. DOL has broad powers to protect U.S. workers' wages and working conditions and to enforce the terms of the LCA. 8 U.S.C. §§1182(n), (p).

**American Competitiveness and Workforce Improvement Act of 1998 ("ACWIA")**

26. DOL's authority over the H-1B program—especially as it relates to wage protection—was expanded in 1998 through passage of the American

Competitiveness and Workforce Improvement Act of 1998 ("ACWIA"), Pub. L.

105-277, 112 Stat. 2681, 641-655 (1998) (codified as amended at 8 U.S.C.

§§1184(c), (g), 1182(n)).

27. Critically for purposes of this action, the ACWIA established a framework

to address the problem of H-1B employers who lack sufficient work for their H-1B

employees. *See* 8 U.S.C. §1182(n)(2)(c)(vii). When an employer places an

employee in "nonproductive status," the employer must continue to pay the H-1B

employee the wage set forth in the LCA, otherwise the employer is in violation of

the conditions of the LCA. 8 U.S.C. §§1182(n)(2)(C)(vii)-(D); 20 C.F.R.

§655.731(c)(7)(i); *see also Administrator, WHD v. Lambents Group & Venkat*

*Potini*, 08-LCA-36 (ALJ Jan. 27, 2010) (finding employee entitled to back pay,

including nonproductive work, once she entered into employment and became

eligible for work). Essentially, H-1B employers who find that they lack sufficient

work for an H-1B employee to perform have two choices: (a) terminate the

employee and pay for his or her return home; or (b) continue to pay the wage

required on the LCA until there is once again work to perform. 8 U.S.C.

§1182(n)(2)(C)(vii).

28. Even though Congress anticipated the issue underlying USCIS's denial of

Kony's petition for Mr. Kuncham, Congress chose *not* to require employers to

demonstrate that they have sufficient specialty occupation work for an intended

11

beneficiary at the time of filing the H-1B petition, nor did Congress forbid employers from retaining H-1B workers for yet-to-be-determined projects. Through the ACWIA, Congress permitted employers to hire workers even where there was a risk they would enter "non-productive status," and addressed that scenario by empowering DOL to force employers to provide back pay to workers who are not given sufficient work to perform. 8 U.S.C. §1182(n)(2)(c)(vii).

**Specialty Occupation**

29. Turning to USCIS's role in the administration of the H-1B program, other than rendering admissibility determinations required of all visa applicants, Congress delegated two principal tasks to USCIS: determining whether the position the employer seeks to fill qualifies as a "specialty occupation"; and assessing whether the noncitizen worker meets the minimum requirements for that position. 8 U.S.C. §1184(i); 8 C.F.R. §214.2(h)(4)(i)(B)(2).

30. According to 8 U.S.C. §1184(i)(1),

The term "specialty occupation" means an occupation that requires—

(A) theoretical and practical application of a body of highly specialized knowledge, and
(B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

31. An employer may demonstrate that a job offer qualifies as a "specialty occupation" by establishing:

12

( 1 ) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

( 2 ) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

( 3 ) The employer normally requires a degree or its equivalent for the position; or

( 4 ) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. §214.2(h)(4)(iii)(A).

32. The Form I-129 instructions identify the evidence employers must file in support of their H-1B petitions. *See* USCIS, Form I-129 Instructions at 7-8, *available at* https://www.uscis.gov/sites/default/files/files/form/i-129instr.pdf. The instructions generally track the dual adjudicative responsibility of USCIS: determining whether the position the employer seeks to fill qualifies as a "specialty occupation;" and whether the noncitizen worker meets the minimum requirements for that position. 8 U.S.C. §1184(i); 8 C.F.R. §214.2(h)(4)(i)(B)(2). Notably, employers are *not* required to submit evidence demonstrating that they have specialty occupation work for the beneficiary to perform throughout the entire requested H-1B validity period.

## FACTUAL ALLEGATIONS

33. On March 31, 2017, Plaintiff filed a Petition for Nonimmigrant Worker (Form I-129) on behalf of Mr. Kuncham, a citizen of India, petitioning to classify him in H-1B status so that he could work for the Petitioner in the specialty occupation of Senior Software Engineer. USCIS issued a receipt notice for Plaintiff's Form I-129 on April 3, 2017.

34. Because Mr. Kuncham, as the Beneficiary, did not meet any of the exemptions in 8 U.S.C. 1184(g)(5), the petition filed on his behalf was subject to the regular 65,000 cap on H-1B petitions. As such, Kony filed the petition in the first week in April with a requested validity period of October 1, 2017 to September 8, 2020.

35. Mr. Kuncham holds a Bachelor of Science degree and a Master of Computer Applications degree from Sri Venkateswara University in Tirupati, India. Moreover, Mr. Kuncham would bring seven years of relevant experience to the position. As a Senior Software Engineer, Mr. Kuncham would be employed and paid by the Plaintiff.  Initially, he would work at Plaintiff's corporate headquarters in Austin, Texas and its office in Orlando, Florida, performing tasks remotely for Plaintiff's clients. Because of the nature of its business, Plaintiff anticipated it would likely place him at client worksites, and indicated to the Government that should that situation arise, an amended H-1B petition would be

filed. *See Matter of Simeio Solutions, LLC*, 26 I&N Dec. 542 (AAO 2015) (holding that a worksite location change is a material change in the terms and conditions of employment that triggers a petitioner's duty to file an amended H-1B petition). Plaintiff acknowledged this likelihood to avoid the Government being surprised by a future amendment filing, while affirming its intent to follow all H-1B laws. Regardless of the location at which Mr. Kuncham would be working, Plaintiff would retain the right to control his employment, including assigning him work, conducting performance reviews, and providing his salary and associated benefits.

36. In support of its petition, Plaintiff supplied an LCA (Case Number I-200-17058-054549), certified by the DOL for the requested validity period of September 9, 2017 through September 8, 2020; a letter from Garima Rana, Plaintiff's Human Resources Operations Lead; a notarized affidavit from Todd Riesterer, Plaintiff's Chief Human Resources Officer; background information about Plaintiff; copies of Mr. Kuncham's degrees and transcripts, and an evaluation deeming them equivalent to U.S. degrees; and a copy of the biographic page of Mr. Kuncham's unexpired passport.

37. The petition indicated that Mr. Kuncham would perform specialty occupation work at Plaintiff's headquarters in Texas and its office in Florida, and would work off-site at client sites only when required. As such, only the Florida and Texas worksites were listed on the LCA.

38. The position of Senior Software Engineer offered to Mr. Kuncham has a great number of technical responsibilities that could not be performed by an individual lacking the equivalent of a U.S. bachelor's degree. These responsibilities, outlined in Ms. Rana's letter, include "[p]articipating in technical discussions with the Customer Project Team;" "[d]eveloping, building, and unit testing client side Mobile application solutions using device native API's and application frameworks on Kony Platform;" and "[p]articipating in the full life-cycle development process from product definition, through design, development, test, release, and maintenance."

39. On June 26, 2017, USCIS issued a Request for Evidence ("RFE"), alleging that the information provided did not adequately establish Plaintiff's right to control Mr. Kuncham. According to the RFE, "it is unclear to USCIS how [Kony] will have the right to hire, fire, pay and supervise the beneficiary if the work location and end-client is unknown." Additionally, the RFE sought evidence that there was sufficient specialty occupation work available to Mr. Kuncham for the entirety of the requested 3-year validity period. Finally, the RFE requested a certified LCA that listed all of Mr. Kuncham's work locations.

40. The RFE requested numerous items previously submitted by Plaintiff, including a certified LCA that listed all of Mr. Kuncham's work locations, a position description, copies of documentation published by Plaintiff detailing the

16

products and services it provides, and copies of critical reviews of Plaintiff's
software.

41. Plaintiff timely responded to the RFE. In this response, Plaintiff included a
letter from Ms. Rana; a list of current active clients; redacted copies of typical
statements of work between Plaintiff and its clients to demonstrate the availability
of specialty occupation work; approval notices and documentation from previously
approved H-1B petitions filed by Plaintiff on behalf of similarly situated
beneficiaries; copies of printouts from the Occupational Outlook Handbook and
the Occupational Information Network, confirming the degree requirement for Mr.
Kuncham's proposed occupation; additional information about the Plaintiff,
including a favorable review of Plaintiff's software; and copies of Plaintiff's three
most recent income tax returns.

42. In Ms. Rana's letter, she reiterated that should Mr. Kuncham be required to
work offsite at a client location, Plaintiff would file an amended H-1B petition to
document his work at the additional location.

43. On March 16, 2018, USCIS denied the petition filed by Kony on behalf of
Mr. Kuncham. The decision, which referred to Mr. Kuncham by an incorrect name
("Mr. Ghanapuram") no fewer than five times, acknowledged the documentation
provided by Plaintiff and then summarily disregarded it. The decision discounted
numerous statements of work because they did not include Mr. Kuncham's name, a

requirement USCIS had not imposed when it requested statements of work in the RFE. Ultimately, USCIS denied the petition for one simple reason, which it repeated throughout the decision: Kony had "not documented that [it] ha[s] sufficient specialty occupation work for the beneficiary to perform throughout the entire requested validity period."

44. Prior to issuing the decision denying H-1B status to Mr. Kuncham, the Government denied four other H-1B filings that had factual elements that were nearly identical to Mr. Kuncham's filing. The prior four decisions all relate to H-1B cap subject cases also filed with requested start dates of October 1, 2017 for positions that would be based at Plaintiff's Austin or Orlando offices. All of these cases were appealed to the USCIS Administrative Appeals Office (AAO). On June 13, 2018, Kony received adverse decisions from the AAO on the first two filed appeals. Both decisions affirmed denials of Kony H-1B petitions because, according to the AAO, "the record lacks sufficient evidence of the actual work that the Beneficiary will perform." *Matter of K-S-, Inc.,* ID# 1185381 (AAO June 13, 2018); *Matter of K-S-, Inc.*, ID#1192216 (AAO June 13, 2018).

45. Within two months of USCIS's decision, Kony received two other denials that included the same or similar language regarding insufficient evidence of specialty occupation work for the entire H-1B validity period. Upon information and belief, USCIS denied those petitions, like the petition at issue here, on the

18

basis of an agency policy memorandum entitled Contracts and Itineraries Requirements for H-1B Petitions Involving Third Party Worksites, which was issued by USCIS on February 22, 2018 without notice and comment. USCIS Mem. PM-602-0157 (Feb. 22, 2018) [hereinafter "Third-Party Worksites Memo"]. Upon information and belief, USCIS issued this policy memorandum to implement President Trump's Executive Order entitled "Buy American and Hire American." E.O. 13788, Buy American and Hire American, 82 Fed. Reg. 18837 (April 18, 2017); *see also* Letter from L. Francis Cissna, Dir., USCIS, to Sen. Charles E. Grassley, Chairman, S. Comm. on the Judiciary (Apr. 4, 2018) https://www.judiciary.senate.gov/download/uscis-to-grassley_-buy-america-hire-america-update (identifying USCIS policy changes in wake of the executive order, and specifically discussing the February 22, 2018 policy memorandum).

## COUNT ONE
### Violation of the Administrative Procedure Act
### 5 U.S.C. §701, et seq.

46. Plaintiff re-alleges and incorporates by reference herein all of the allegations set forth above.

47. The APA empowers this Court to hold unlawful and set aside agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §706(2).

19

48. Here, Defendants' decision is unlawful and should be set aside, because USCIS does not have the authority under the INA or its implementing regulations to require an employer petitioning for an H-1B worker to demonstrate, at the time of filing the H-1B petition, that the employer has three years' worth of work for the prospective employee to complete. Rather, by instructing USCIS to determine whether the position is a "specialty *occupation*," Congress directed USCIS to assess the *type* of job the H-1B worker will fill, not the specific tasks he or she may be assigned to complete in a future three-year period. 8 U.S.C. §§1101(a)(15)(H)(i)(b); 1184(c). USCIS's own regulations support this interpretation. 8 C.F.R. §214.2(h)(4)(i)(B)(2).

49. Moreover, the statute, read as a whole, makes plain that Congress neither authorized nor intended to authorize USCIS to require such an onerous showing of employer-petitioners seeking H-1B classification for their prospective employees. In fact, Congress contemplated the very issue USCIS alleges is at play here— insufficient specialty occupation work—and tasked the Secretary of *Labor* with addressing it, by forcing employers to provide back pay to so-called "benched" employees. 8 U.S.C. §§1182(n)(2)(C)(vii)-(D). What is more, Congress knew perfectly well how to signal to Defendants that a petitioner for a particular visa category must furnish a detailed plan of what he or she will do while in the United States, yet no such language appears in the H-1B provisions of the statute.

*Compare* 8 U.S.C. §§1101(a)(15)(H)(i)(b), 1184(c) *with* 8 U.S.C.

§§1101(a)(15)(H)(iii), (J) (authorizing visas for individuals coming to participate

in specific exchange or medical training "programs"); *see also* 8 C.F.R.

§214.2(f)(10)(C)(7) (describing "training plans" for certain student visa holders).

50. The agency's departure from its statutory and regulatory authority violates

the APA and demands remediation by this Court.

## COUNT TWO
### Violation of the Administrative Procedure Act
### 5 U.S.C. §701, et seq.

51. Plaintiff re-alleges and incorporates by reference herein all of the

allegations set forth above.

52. Assuming, *arguendo*, that USCIS has the authority to require three years'

worth of specialty occupation assignments of petitioners seeking H-1B visas for

employees they intend to place at third-party worksites, it was improper to impose

that requirement with respect to Kony's petition for Mr. Kuncham.

53. The H-1B petition at issue sought to place Mr. Kuncham at Kony's

headquarters in Texas and at Kony's office in Florida—not at a third-party

worksite. Kony's petition indicated that the company may eventually need to send

Mr. Kuncham to a third-party worksite, at which point Kony would file an

amended H-1B visa petition. With respect to the *amended* petition, Kony would

have been required, under USCIS policy, to furnish evidence that the petitioner has

"specific and non-speculative qualifying assignments in a specialty occupation for the beneficiary for the entire time required in the petition[.]" *See* Third-Party Worksites Memo at 3. But it was premature of USCIS to demand that Kony furnish such evidence on its initial petition to qualify Mr. Kuncham for an H-1B visa.

54. Thus, the denial of Kony's petition for Mr. Kuncham violated USCIS policy and thus was arbitrary and capricious and not in accordance with law. This Court should hold unlawful and set aside USCIS's decision.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Hold unlawful and set aside USCIS's decision denying Plaintiff's I-129 petition on behalf of Mr. Kuncham;

(3) Order Defendants to approve Plaintiff's I-129 petition on behalf of Mr. Kuncham;

(4) Declare that the INA prohibits Defendants from denying Plaintiff's H-1B visa petitions for want of evidence that Plaintiff has sufficient specialty occupation work for the beneficiary to perform throughout the entire requested validity period;

(5) Order Defendants to reopen and approve wrongly denied petitions filed by Plaintiff where the basis for the denial was failure to demonstrate sufficient

specialty occupation work throughout the entire requested H-1B validity

period;

(6) Grant reasonable attorneys' fees and costs as provided under the Equal

Access to Justice Act and the APA;

(7) Grant such further relief as the Court deems just and proper.

Dated: July 9, 2018

Devin McLaughlin
Vermont Bar Number: 2500
Langrock Sperry & Wool, LLP
111 S. Pleasant Street
PO Drawer 351
Middlebury VT 05753
Telephone: 802-388-6356
Fax number: 802-388-6149
Email: DMcLaughlin@langrock.com

Respectfully submitted,

*Thomas K. Ragland
CLARK HILL PLC
1001 Pennsylvania Ave., NW
Suite 1300 South
Washington, DC 20004
Telephone: 202-552-2360
Fax Number: 202-552-2384
Email: TRagland@ClarkHill.com

*Patrick Taurel
CLARK HILL PLC
1001 Pennsylvania Ave. NW
Suite 1300 South
Washington, DC 20004
Telephone: 202-772-0903
Fax Number: 202-772-0901
Email: PTaurel@ClarkHill.com

*Moving for *pro hac vice* admission

*Attorneys for Plaintiff*